IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

DAVID C. FLICKINGER,              )
                                  )
        Plaintiff,                )
                                  )
        v.                        )          NO. 13-3225
                                  )
CAROLYN W. COLVIN,                )
COMMISSIONER OF SOCIAL            )
SECURITY,                         )
                                  )
        Defendant.                )

OPINION

RICHARD MILLS, U.S. District Judge:

This is an action for social security disability insurance benefits,

wherein the Plaintiff seeks review of an adverse administrative decision

pursuant to 42 U.S.C. § 405(g).   Pending before the Court are the

Plaintiff's Motion for Summary Judgment and the Defendant's Motion for

Summary Affirmance.

I. INTRODUCTION

On July 27, 2010, Plaintiff David C. Flickinger applied for disability

insurance benefits, alleging he had been disabled since December 31, 2002.

The Plaintiff's Date Last Insured is September 30, 2008.

The Plaintiff's claim was denied initially and upon reconsideration. He requested a hearing, which was held on February 22, 2012. The Administrative Law Judge (ALJ) issued a decision on March 13, 2012, denying the Plaintiff's benefits. The Appeals Council denied the Plaintiff's request for review on May 31, 2013. Having exhausted all administrative remedies, the Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II. BACKGROUND

### A. Plaintiff's history and medical impairments

The Plaintiff was born on November 21, 1956. He was 46 years old at the time of his alleged onset date and 51 on his Date Last Insured. The Plaintiff is a high school graduate who attended college.

According to Jeffrey Horvath, M.D., a rheumatologist, the Plaintiff's osteoarthritis symptoms since April of 2003 primarily affected his hands. Although Diclofenac initially provided some relief, the Plaintiff continued to experience discomfort in his hands. In 2004, the Plaintiff was also prescribed Tylenol #3 for severe pain. The medication doses were

increased in 2005 and 2006.  Dr. Horvath continued to note osteoarthritic changes, though the Plaintiff's pain remained fairly stable.  In 2007, Dr. Horvath switched the Plaintiff's prescription from Diclofenac to Ketoprofen.  In 2008, the Plaintiff stated he was doing "okay."  The doctor noted osteoarthritic changes and no changes were made to medication.  In 2009, the Plaintiff was unsure whether Ketoprofen was helping so the doctor switched the prescription to Nambumetone.

In April of 2010, Dr. Horvath noted that Plaintiff continued to suffer from severe osteoarthritis of the hands.  The Plaintiff was doing well on Nambumetone but stated that because he is in the coin business and does a fine manipulation of work all day, he continued to experience pain in his fingers.  He reported sometimes taking more than the allotted Tylenol #3, which concerned the doctor.  They discussed the possibility of a pain management referral.  The blood work done earlier in the year was fine.

In February of 2011, Dr. Horvath decided to treat the Plaintiff's osteoarthritis with an injection of the left fourth PIP joint.  In May of 2011, the doctor observed that although the injections had helped, they

had started to wear off.  The Plaintiff reported trying to cut back on medications, though he would still take an extra Tylenol #3 if needed.  A re-injection of his finger was set for August of 2011.

By November of 2011, the Plaintiff continued to have problems and the Nambumetone did not seem to help.  He was taking more pain pills than he should.  The Plaintiff stated that his left 4th finger was so painful that he would like it cut off.  The injection had helped for only two weeks.  Dr. Horvath switched the Plaintiff's medication to Lodine and stated he would refer him to another physician for surgical intervention.

The Plaintiff also suffers from affective mood disorder.  His mental impairment has been treated since February of 2003.  The Plaintiff testified he could not perform any of his previous jobs because his illness had progressed and panic attacks precluded him from staying focused.  When asked by the ALJ how he was able to run his booth at an antique mall, the Plaintiff stated, "On a good day I could, I would be in there maybe four hours. . . . [I]f I average it out, probably an hour and a half, two hours a day."  The Plaintiff testified he could not work full time.  He generally

4

worked by appointment only.  The Plaintiff stated that his therapist advised him to go to work with a plan and do what is needed and then leave.

When asked about symptoms which impaired the Plaintiff's ability to work, the Plaintiff's wife testified, "There are days when he will literally cover his head with a blanket and not come out."  She further stated, "I have also seen panic attacks where he is flailing his arms, you know, wiggling his hands, and stuff like that because he just doesn't have control and doesn't know how to cope."  The Plaintiff's wife testified these occurrences were not daily but were frequent and there was never a week when he had seven good days.  When the Plaintiff worked with his wife, she sometimes had to talk him through stressful situations.

Fareed Tabatabai, M.D., the Plaintiff's psychiatrist, submitted a medical source statement noting some of the Plaintiff's limitations.  Dr. Tabatabai found the Plaintiff to be markedly limited in "The ability to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances;" and "The ability to complete a normal workday and workweek without interruptions from psychologically

based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." According to the Medical Source Statement form, a marked limitation is described as "Performance of the designated work-related mental function is totally precluded on a sustained basis and would result in failure after even short durations, for example from 5 to 15 minutes." The Plaintiff was determined to be mildly or moderately limited in a number of other activities. Dr. Tabatabai further found that Plaintiff's medically determinable impairments were sufficiently severe so as to render the Plaintiff unable to complete a workday more than three or four times per month.

Mary Ossowski, a licensed clinical social worker, also submitted a medical source statement. In her assessment of functional limitations, Ms. Ossowski found the same marked limitations noted above by Dr. Tabatabai and also found that Plaintiff was markedly limited in "The ability to set realistic goals or to make plans independently of others." Like Dr. Tabatabai, Ms. Ossowski found that Plaintiff's medical determinable impairments would render him unable to complete a workday more than

three or four times per month.

B. The ALJ's Decision

The ALJ found that although the Plaintiff performed some work after his alleged onset date, this work did not rise to the level of substantial gainful activity.  The ALJ described the Plaintiff's severe impairments as affective mood disorder, osteoarthritis and obesity.  However, the ALJ determined that those impairments, either individually or in combination, did not meet or medically equal the severity criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ further found that the Plaintiff had the residual functional capacity (RFC) to perform medium work with the following limitations: (1) no tasks that would take longer than 30 days to learn; (2) only tasks that are routine and repetitive in nature; (3) only low stress environments, which includes only occasional decision-making or changes in work setting so that every day the Plaintiff would know what work is expected; (4) no fast pace production requirements; and (5) no more than occasional contact with the general public, coworkers or supervisors.

The ALJ found that Plaintiff could not perform his past relevant work as a sales clerk, cashier, producer, production technician or stock control clerk.  However, relying on the vocational expert's testimony, the ALJ found that Plaintiff was not disabled because he could perform a significant number of jobs in the national economy.  Examples of these jobs included cleaner, food service worker and laundry worker.

The Parties have filed Motions for Summary Judgment.  The Plaintiff alleges the ALJ erred in evaluating his RFC based on the medical evidence and testimony in the record.   The Commissioner asserts substantial evidence supports the ALJ's decision.

## III. DISCUSSION

A. Standard of review

When, as here, the Appeals Council denies review, the ALJ's decision stands as the final decision of the Commissioner.  See Schaaf v. Astrue, 602 F.3d 869, 874 (7th Cir. 2010).  The Act specifies that "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  "Substantial evidence"

is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Yurt v. Colvin, 758 F.3d 850, 856 (7th Cir. 2014) (citations omitted). Although the Court's task is not to re-weigh evidence or substitute its judgment for that of the ALJ, the ALJ's decision "must provide enough discussion for [the Court] to afford [the Plaintiff] meaningful judicial review and assess the validity of the agency's ultimate conclusion." Id. at 856-57.

A claimant is entitled to disability insurance benefits if he was "under a disability" within the meaning of the Social Security Act by the date his insured status expired. See 20 C.F.R. §§ 404.131(a); 404.320(b)(2); Perkins v. Chater, 107 F.3d 1290, 1295 (7th Cir. 1997). Because the Plaintiff's insured status expired on September 30, 2008, he must show that he became disabled on or before that date. See Eichstadt v. Astrue, 534 F.3d 663, 668 (7th Cir. 2008).

B. The ALJ's physical RFC assessment

The Plaintiff contends that the ALJ's physical RFC evaluation does not reflect the limitations on the Plaintiff's use of his hands caused by his

severe osteoarthritis symptoms.  Moreover, the ALJ only cites osteoarthritis treatment notes occurring after the date on which the Plaintiff was last insured.  The ALJ does not address Exhibit 7F, which notes the specialized treatment the Plaintiff received for osteoarthritis during the relevant period. The Plaintiff further asserts that based on his RFC and the limitations with his hands, there are few jobs available to the Plaintiff.  The Plaintiff's mental limitations further restrict available jobs.  The vocational expert testified that jobs were available that Plaintiff could perform only if the mental limitations were relaxed.

In finding that the Plaintiff's arthritis was a severe impairment and that Plaintiff was restricted to medium work, the ALJ relied on the opinion of George Andrews, M.D., the state agency physician.  Dr. Andrews considered the Plaintiff's arthritis as his primary diagnosis.  He cited evidence from the record that on September 23, 2008–one week before the Plaintiff's Date Last Insured–that although the Plaintiff had osteoarthritic changes in his joints, his wrists, elbows, shoulders, hips knees, feet and ankles moved well without tenderness or synovitis (inflammation of the

lining of the joints).  Upon considering the Plaintiff's osteoarthritis, Dr.

Andrews opined that Plaintiff could lift and/or carry 25 pounds frequently

and 50 pounds occasionally.  The Plaintiff could also stand and/or walk for

about six hours and sit for about six hours in an eight-hour day.  Dr.

Andrews stated that Plaintiff had no manipulative limitations.

The Plaintiff's abilities as found by Dr. Andrews were consistent with

the ALJ's physical RFC finding of minimum work.  See 20 C.F.R. §

404.1567(c) ("Medium work involves lifting no more than 50 pounds at a

time with frequent lifting or carrying of objects weighing up to 25

pounds.").

Although the Plaintiff alleges that the ALJ did not discuss records

relating to the Plaintiff's osteoarthritis, it is apparent that Dr. Andrews

considered the Plaintiff's osteoarthritis before the Date Last Insured.  The

United States Court of Appeals for the Seventh Circuit has held that even

if an ALJ does not explicitly consider a limitation, the ALJ effectively

accounts for a condition when his or her decision is consistent with the

opinion of a physician who considered the condition.  See Skarbeck v.

Barnhart, 390 F.3d 500, 504 (7th Cir. 2004).

By making an RFC finding consistent with Dr. Andrews's opinion, therefore, the ALJ accounted for the Plaintiff's osteoarthritis. Based on Dr. Andrews's opinion, the Court concludes that substantial evidence supported the ALJ's decision as to the Plaintiff's RFC. The Court further concludes that the ALJ finding that, even in its worst state, the Plaintiff's arthritis was not disabling supports the ALJ's ultimate finding.

C. The ALJ's mental RFC assessment

Additionally, the Plaintiff contends the ALJ's mental RFC evaluation does not reflect all limitations supported by the record, including the Medical Source Statements completed by Dr. Tabatabai and Ms. Ossowski, as well as the testimony of the Plaintiff and his wife. The opinions of the mental health providers who have been treating the Plaintiff's severe impairment of affective mood disorder in addition to the testimony of the Plaintiff and his wife suggest that the Plaintiff would miss three or four days of work per month, which would render him incapable of engaging in substantial gainful activity.

It is worth noting that the ALJ did impose a number of restrictions on the complexity, stress, speed, and social involvement of the Plaintiff's work. The vocational expert testified that a hypothetical individual who was the same age as the Plaintiff and subject to the same restrictions would be capable of performing a significant number of jobs.

Moreover, the Plaintiff's work activities throughout the relevant period supported the ALJ's mental RFC finding. The Plaintiff worked 20 to 40 hours per week from 2002 to mid-2007 selling antique coins. For several months in 2007, the Plaintiff also spent 20 to 30 hours per week working for Theater in the Park in Petersburg, Illinois. During this time frame, the Plaintiff reported being very busy. Although the work was not lucrative, the Plaintiff's activities suggest that his mental limitations were not disabling.

The ALJ also considered the Plaintiff's typical non-work activities, which included golfing and playing computer games. The ALJ reasonably concluded that Plaintiff was capable of concentrating on activities that interested him. The Plaintiff's social worker also found that Plaintiff could

maintain focus on things he enjoyed.  The Court finds this aspect of the ALJ's RFC finding is supported by substantial evidence.

The ALJ also noted that Plaintiff was not entirely compliant in taking prescribed medications, which suggests that Plaintiff's symptoms may not be as disabling as he suggests.  The ALJ also pointed to the Plaintiff's alcohol use and cocaine abuse as a factor.  The Plaintiff spent $10,000 on cocaine in 2007 and used the drug over the course of several months.  Additionally, the Plaintiff stopped taking his medications as a result.  It stands to reason that an individual's failure to follow a physician's instructions with respect to prescribed medication along with his drug use might aggravate his mental health issues.

Additionally, the ALJ pointed to the Plaintiff's statement in 2003 that he was not taking his medication so that he could experience manic symptoms which gave him more energy to get everything done.  The ALJ also cited the Plaintiff's statement that "he needs the excitement mania has provided in the past."  The Plaintiff's failure to take his medications and otherwise follow his physician's instructions suggest that he was not as

limited as alleged.  See Social Security Ruling 96-7p, 1996 WL 374186, at *7-8.

The ALJ determined there was a basis for questioning the reliability of the Plaintiff's subjective complaints.  The ALJ found that Plaintiff's credibility was negatively impacted by his daily activities, his medication non-compliance, use of alcohol and cocaine abuse and improvement with proper medication usage.  The Court finds that the ALJ's determination as to the Plaintiff's credibility was reasonable.

The ALJ also provided multiple reasons for giving little weight to Dr. Tabatabai's opinion.  Specifically in April and June of 2011, the Plaintiff was "feeling good" and his mood was "overall stable" and he was staying busy with work.  This was in contrast to the limitations Dr. Tabatabai had suggested.  Accordingly, the ALJ reasonably found that Dr. Tabatabai's opinion was entitled to little weight.

The ALJ also found that Ms. Ossowski's opinion was entitled to little weight.  The restrictions and limitations that she noted for the Plaintiff appear to be based primarily on the Plaintiff's self-reporting of symptoms.

15

The ALJ should rely on medical opinions which are based on objective observations and not merely a claimant's subjective complaints.  See Rice v. Barnhart, 384 F.3d 363, 370-71.  This is particularly true in this case when there are issues regarding the Plaintiff's credibility and evidence that Plaintiff did not take his medication as prescribed.

The ALJ committed no error in finding that the record did not support Ms. Ossowski's opinion.  Accordingly, it was reasonable to afford that opinion little weight and find that the Plaintiff had a limited but adequate ability to perform a significant number of jobs.

For all of these reasons, substantial evidence supported the ALJ's mental RFC finding.

Based on the foregoing, the ALJ committed no error in finding that the Plaintiff was not disabled.

<u>Ergo</u>, the Motion of Plaintiff David C. Flickinger for Summary Judgment [d/e 6] is DENIED.

The Amended Motion of Defendant Commissioner of Social Security for Summary Affirmance [d/e 12] is ALLOWED.

The Clerk will enter Judgment and terminate this case.

ENTER: September 16, 2015

FOR THE COURT:

s/Richard Mills
Richard Mills
United States District Judge